OPINION *Page 2 
{¶ 1} Defendant-appellant Joseph Diorio appeals from his conviction of possession of criminal tools, a violation of R.C. 2923.24(A), which was entered in Mahoning County Court No. 4. Three arguments are raised in this appeal. The first argument is a sufficiency argument. The second argument is a manifest weight of the evidence argument. The last argument is that Diorio could not be convicted of R.C. 2923.24(A), possession of criminal tools, because of the more specific statute R.C.2915.02, gambling devices, is used in gambling cases. For the reasons stated below, the conviction is reversed and the sentence is vacated on the basis that it is against the manifest weight of the evidence. The case is remanded for a new trial.
 STATEMENT OF THE CASE {¶ 2} On March 12, 2005, officers from the Austintown Police Department searched the premises of Theodore's Banquet Center and T G Lounge (collectively referred to as Theodore's) located at 1400 and 1404 Niles Canfield Road, in Mahoning County, Ohio. The search was performed pursuant to a search warrant.
 {¶ 3} The warrant was obtained because police had noticed over a few months that numerous cars were parked in Theodore's parking lot after hours. When officers looked in windows, which were partially blocked off, they noticed people standing around a dice table.
 {¶ 4} On the day of the search, police entered the facility and arrested nine people and charged them with various gambling offenses. The dice game being played on that night was Barbutt. Joe Diorio was one of the nine charged with gambling and possession of criminal tools, which in this case was U.S. currency.
 {¶ 5} A bench trial was held on October 20, 2005. Diorio was found guilty of possession of criminal tools. He was found not guilty of gambling. For the possession of criminal tools conviction, he was sentenced to 180 days in jail with 150 suspended. The remaining 30 days were to be served pursuant to electronic monitored house arrest (EMHA) within 14 days. He received 12 months of probation and was fined $250 plus costs.
 {¶ 6} Diorio timely appeals. The trial court stayed the sentence pending appeal. *Page 3 
 FIRST ASSIGNMENT OF ERROR {¶ 7} "THE EVIDENCE AT TRIAL WAS INSUFFICIENT AS A MATTER OF LAW TO CONVICT APPELLANT JOSEPH DIORIO FOR POSSESSION OF CRIMINAL TOOLS PURSUANT TO OHIO REVISED CODE SECTION 2923.24."
 {¶ 8} The test for sufficiency requires a determination of whether the state has met its burden of production at trial. State v.Thompkins, 78 Ohio St.3d 380, 390, 1997-Ohio-52. In order to find a conviction was supported by sufficient evidence, this court must review the evidence in a light most favorable to the prosecution. State v.Jenks (1991), 61 Ohio St.3d 259, 279.
 {¶ 9} Possession of criminal tools, as used in R.C. 2923.24, states that "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." Therefore, the state was required to produce evidence, which if believed, would show that Diorio had control of the money and he was intending to use it criminally.
 {¶ 10} At trial, Patrolman Pezzulo testified that Diorio had two different rolls of U.S. currency on his person. (Tr. 90). The total amount taken was $1,744. (Tr. 88). The money was taken from his person, not from the table. (Tr. 90-91). Sergeant Yacovone testified that Diorio was around the dice table and at one point he threw money on the table. (Tr. 55). He testified that he saw this when he was peering through the window and he identified people by their backs. (Tr. 55-56). No other witness could testify that Diorio was participating in the game, however, one witness did identify him as being there. (Tr. 171.) Also, Sergeant Solic testified that the name "Joe" was on a ledger that could be considered a gambling ledger. (Tr. 202). Other evidence established that illegal gambling was occurring at Theodore's on the night in question. As is explained in the companion cases of State v.Terlesky, 7th Dist. No. 05MA237 and State v. Dodds, 7th Dist. No. 05MA236, the evidence was sufficient to show illegal gambling. For example, Theodore's was open after its regular business hours and after liquor serving hours. Witnesses Donna Merrill and Twila Borrell, who were there that night and were playing Barbutt, testified that it was customary for the person winning to pay a cut to the house/dealer. (Tr. 112-113, 176). Donna explained that while she did not see who paid a cut to the house/dealer, she was sure someone did. (Tr. 115). *Page 4 
 {¶ 11} When all of the above facts are considered, and when viewed in the light most favorable to the state, it must be found that the state met its burden of production; there was sufficient evidence to show that Diorio had money in his possession and had intent to use it to gamble. This assignment of error has no merit.
 SECOND ASSIGNMENT OF ERROR {¶ 12} "THE VERDICT FINDING APPELLANT JOSEPH DIORIO GUILTY OF POSSESSION OF CRIMINAL TOOLS PURSUANT TO OHIO REVISED CODE SECTION2923.24 IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 13} A manifest weight challenge questions whether the state has met its burden of persuasion. Thompkins, 78 Ohio St.3d at 390. Where an appellate court reviews a claim that a verdict is against the manifest weight of the evidence, the court sits as a "thirteenth juror" and either agrees or disagrees with the fact finder's resolution of conflicting testimony. Id. at 387. An appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Id.
 {¶ 14} In this case, we find that the trial court lost its way. As explained above, only one person could testify that Diorio was going to use the money criminally. Yacovone specifically testified that he saw Diorio throw money on the table. That would amount to gambling. However, the trial court did not believe that testimony and found him not guilty of gambling.
 {¶ 15} This court is aware that, "[t]he general rule as to inconsistency in a verdict as between different counts of an indictment is (* * *) that `consistency between the verdicts on the several counts of an indictment * * * is unnecessary where defendant is convicted on one or some counts but acquitted on others, and the conviction will generally be upheld irrespective of its rational incompatibility with the acquittal.'" State v. Adams (1978), 53 Ohio St.2d 223, 228, vacated on other grounds (1978), 439 U.S. 811. However, we find that this case does not fall under the general rule. Diorio was charged with possession of criminal tools for the money he had on his person. Carrying money on one's person is not illegal. Money is different from a specialized tool that is used for breaking into a house or a snot tube that is used *Page 5 
specifically for drug use. The possession of money in an illegal establishment does not show the intent to use it illegally. There must be something more to show that it was intended to be used for an illegal purpose. Here, the only evidence offered would have clearly proven gambling, however, the trial court acquitted him of gambling. Thus, it can be concluded that the trial court did not believe that evidence. Due to the nature of the criminal tool, i.e. U.S. currency, and the particular facts in this case, we cannot uphold the verdict without more in the record to show an intent to use the money criminally.
 {¶ 16} The other evidence offered to support the possession of criminal tools conviction are the amount of money Diorio had on his person, the name "Joe" was on the ledger, and the circumstances surrounding how and when the Barbutt game was being played. As to the ledger, the name Joe is very common and it could have been anyone. An indication of that is that out of the nine people charged, two were named Joe. Thus, we have no indication of whether Joe on the ledger was Joe Diorio, Joseph Hanna (the other Joe charged), or some other Joe. As to the circumstances surrounding the game, those facts provide this court with evidence that illegal gambling was occurring at Theodore's. As we explained in the companion cases of Terlesky and Dodds, the game was being played after hours and after the hours in which liquor is permitted to be served. The windows of the establishment were partially blocked, indicating an intent to keep people from viewing what was occurring in the building. Two people playing Barbutt that night testified that it was customary for a winning party to pay a cut to the house/dealer. When the house/dealer was paid, the money was placed in the dealer's box. Neither of those two witnesses could testify as to whether the house/dealer got a cut, one indicated that while she did not know who paid a cut to the house/dealer, she is sure someone did. Money confiscated from the dealer's box on the table was $1,871. Lastly, Diorio's presence at Theodore's and the amount of money, $1,744, on his person were the other evidence to try to support the conviction for possession of criminal tools.
 {¶ 17} The question in this case is whether or not a person who has money in his possession could be found guilty of the illegal possession of criminal tools merely because he was near other people who were gambling. Considering all the evidence, the weight of the evidence does not support the conviction. The fact that Diorio was *Page 6 
present at an establishment where illegal gambling was occurring and had money in his pockets does not clearly indicate that Diorio had the mental culpability required to be found guilty of possession of criminal tools. The name "Joe" being on the ledger does not provide any indication of Diorio gambling or show a purpose for him to use the money on him to gamble. As explained above, there were two Joes charged. It is unclear which Joe this ledger is referring to. Without any other evidence in the record to show that he had the mental culpability for possession of criminal tools, we find that the state failed to meet its burden of persuasion. The conviction is against the manifest weight of the evidence. This assignment of error has merit. Diorio's conviction is reversed and the sentence is vacated. The case is remanded to the trial court for a new trial.
 THIRD ASSIGNMENT OF ERROR {¶ 18} "OHIO LAW PROHIBITS A CONVICTION FOR POSSESSION OF CRIMINAL TOOLS PURSUANT TO OHIO REVISED CODE SECTION 2923.24 IN GAMBLING CASES BECAUSE OHIO REVISED CODE SECTION 2915.02 IS A MORE SPECIFIC STATUE [SIC] THAT DEFINES WHAT ITEMS WILL BE CONSIDERED GAMBLING DEVICES AND THE TWO STATUTES CANNOT BE RECONCILED."
 {¶ 19} Above, we reversed the conviction, vacated the sentence and remanded the case for a new trial. For purposes of retrial, this assignment of error must be addressed.
 {¶ 20} Diorio argues that he could not have been found guilty of possession of criminal tools because the legislature in the enactment of R.C. 2915.02, gambling statute, enumerated that possession of "gambling devices" was illegal. R.C. 2915.01 specifically defines what is considered a "gambling device". Diorio contends that since "R.C. 2915.02
defines specific property as contraband and does not include money, and it is a specific statute, then possession of money cannot violate R.C. 2923.24," and his conviction must be overturned. Diorio cites the Ohio Supreme Court case State v. Volpe (1988), 38 Ohio St.3d 191, to support his position.
 {¶ 21} In Volpe, appellant was found guilty of possession of criminal tools in violation of R.C. 2923.24 for possessing two "Castle machines," which were gambling machines. Appellant argued he was improperly convicted of possession of criminal *Page 7 
tools because R.C. 2915.02(A)(5) was a specific statute that addressed possession of gambling devices, and as such, he could only be charged with that offense and not possession of criminal tools. The Supreme Court agreed and explained:
 {¶ 22} "Well-established principles of statutory construction require that specific statutory provisions prevail over conflicting general statutes.
 {¶ 23} "* * *
 {¶ 24} "R.C. 2915.02(A)(5) and 2923.24 are irreconcilable. R.C.2915.02(A)(5), in conjunction with R.C. 2915.02(F), treats possession of a gambling device as a first degree misdemeanor. As such, a person convicted of violating R.C. 2915.02(A)(5) could receive no prison sentence or a prison sentence of up to six months. See R.C. 2929.21. R.C. 2923.24 makes possession of criminal tools, arguably such instruments as gambling devices, a fourth degree felony, carrying a minimum prison sentence of six months and a maximum prison sentence of five years. See R.C. 2929.11. Therefore, since R.C. 2915.02 and 2923.24
provide for different penalties for the same conduct, they cannot be construed to give effect to both. R.C. 2915.02 and 2923.24 were enacted effective January 1, 1974, as part of the modern Ohio Criminal Code. Therefore, under R.C. 1.51, the general law, R.C. 2923.24, does not prevail as being the `later adoption.' Further, the fact that the General Assembly enacted R.C. 2915.02(A)(5) to reach possession and control of gambling devices indicates that it did not intend for R.C.2923.24 to reach possession and control of such devices.
 {¶ 25} "* * *
 {¶ 26} "Given that the General Assembly clearly enacted R.C.2915.02(A)(5) to reach criminal possession and control of a gambling device and classified such conduct as a misdemeanor of the first degree under R.C. 2915.02(F), we hold that R.C. 2923.24, a general statute prohibiting possession and control of criminal tools and classifying such conduct as a fourth degree felony, cannot be used to charge and convict a person of possessing and controlling a gambling device. Accordingly, we reverse the judgment of the court of appeals and remand these two cases to the trial court for disposition consistent with this opinion." Id. at 193-194.
 {¶ 27} This case clearly indicates that if a person has possession of a "gambling device" then that person can only be charged under R.C.2915.02 and cannot be charged under R.C. 2923.24. R.C. 2915.02, the gambling statute states: *Page 8 
 {¶ 28} "(A) No person shall do any of the following:
 {¶ 29} "(1) Engage in bookmaking, or knowingly engage in conduct that facilitates bookmaking;
 {¶ 30} "(2) Establish, promote, or operate or knowingly engage in conduct that facilitates any game of chance conducted for profit or any scheme of chance;
 {¶ 31} "(3) Knowingly procure, transmit, exchange, or engage in conduct that facilitates the procurement, transmission, or exchange of information for use in establishing odds or determining winners in connection with bookmaking or with any game of chance conducted for profit or any scheme of chance;
 {¶ 32} "(4) Engage in betting or in playing any scheme or game of chance as a substantial source of income or livelihood;
 {¶ 33} "(5) With purpose to violate division (A)(1), (2), (3), or (4) of this section, acquire, possess, control, or operate any gamblingdevice." (Emphasis added).
 {¶ 34} R.C. 2915.01 specifically defines gambling device as:
 {¶ 35} "(F) `Gambling device' means any of the following:
 {¶ 36} "(1) A book, totalizer, or other equipment for recording bets;
 {¶ 37} "(2) A ticket, token, or other device representing a chance, share, or interest in a scheme of chance or evidencing a bet;
 {¶ 38} "(3) A deck of cards, dice, gaming table, roulette wheel, slot machine, or other apparatus designed for use in connection with a game of chance;
 {¶ 39} "(4) Any equipment, device, apparatus, or paraphernalia specially designed for gambling purposes;
 {¶ 40} "(5) Bingo supplies sold or otherwise provided, or used, in violation of this chapter."
 {¶ 41} As can be seen by this statute, money is not included as a "gambling device." Diorio admits this, but he argues that since it is not included in the "gambling device" definition he cannot be guilty of possession of criminal tools. He seems to be arguing that in order for a person to be guilty of possession anything that could be used in conjunction with gambling had to be listed in the gambling devices section of the statute. Otherwise, according to him, one cannot be charged with the offense.
 {¶ 42} His argument is incorrect. It is true that a person in possession of a "gambling device" can only be charged under R.C. 2915.02
and cannot be charged *Page 9 
under R.C. 2923.24. However, that does not mean that a person that is in possession of something that is used for gambling but that is not defined as a "gambling device" cannot be charged and found guilty of possession of criminal tools. Or, in other words, if a specific statute is applicable it must be applied over the general statute, but if the specific statute is inapplicable, then the general statute may be applied.
 {¶ 43} The Eighth Appellate District had held as such in a similar situation. State v. Earle (Oct. 10, 1991), 8th Dist. No. 59120. InEarle, the court explained that an individual cannot be convicted of possessing criminal tools under R.C. 2923.24 for possessing a "gambling device." It then explained that while appellant had been indicted for possessing various gambling devices, he was also indicted for possessing a membership notebook and money. Thus, the Eighth District concluded that appellant's possession of criminal tools conviction was not contrary to law.
 {¶ 44} Moreover, we can also analogize this situation to drug cases. R.C. 2925.12 is the possession of drug instruments statute. There are exceptions listed in the statute but the general idea of the statute is that it makes it illegal to possess an instrument that has been used to administer or prepare a drug. The Ohio Supreme Court has reviewed this statute in conjunction with the possession of criminal tools statute, R.C. 2923.24. State v. Mateo (1991), 57 Ohio St.3d 50, 54. InMateo, appellant argued that a "snot tube" fell under the possession of drug instruments statute and thus, he could not properly have been found guilty under the possession of criminal tools statute. The Court disagreed and stated that a snot tube is neither a hypodermic nor a syringe and thus, R.C. 2925.12(A) was inapplicable. Id. It then added that R.C. 2923.24 was applicable and appellant was appropriately charged thereunder. Id.
 {¶ 45} Thus, considering Earle and Mateo, Diorio was properly charged under the possession of criminal tools statute, R.C. 2923.24, since money does not constitute a gambling device under R.C. 2915.01 and2915.02. Even though the specific statute of "gambling devices" does not apply to Diorio's situation, that does not render the general statute inapplicable. This assignment of error lacks merit.
 {¶ 46} Diorio was correctly charged with possession of criminal tools. The state met its burden of production. However, the state failed to meet its burden of persuasion. *Page 10 
 {¶ 47} The Ohio Constitution states: "No judgment resulting from atrial by a jury shall be reversed on the weight of the evidence except by concurrence of all three judges hearing the cause." (Emphasis added.) Section 3(B)(3), Article IV, Ohio Constitution. The case before us was not a trial by a jury, rather it was a bench trial. The Ohio Supreme Court has previously held that where a trial is not to a jury, a majority of the Court of Appeals may reverse a judgment on the weight of the evidence. State v. Gilkerson (1965), 1 Ohio St.2d 103. Thus, since the majority of this court finds that the bench trial's decision was against the manifest weight of the evidence, we have the authority to reverse and remand the case for a new trial.
 {¶ 48} For the foregoing reasons, based upon manifest weight of the evidence, Diorio's conviction is hereby reversed, his sentence is vacated and the case is remanded to the trial court for a new trial.
DeGenaro, P.J., dissents; see dissenting opinion.
Donofrio, J., concurs.