JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Janet Miller ("Miller"), appeals the trial court's denial of her motion to suppress and her conviction for possession of criminal tools. Finding no merit to the appeal, we affirm.
 {¶ 2} In 2006, Miller was charged with codefendants, Hasani Thomas ("Thomas"), Kerron Rawlings ("Rawlings"), and Shannon Johnson ("Johnson"), for drug trafficking, drug possession, and possession of criminal tools. Miller filed a motion to suppress and, after a hearing, the court denied her motion. The matter proceeded to a bench trial, at which she was convicted of possessing criminal tools. Miller was sentenced to one year of community control sanctions. The following evidence was presented at trial.
 {¶ 3} In April 2006, Cleveland police officers, Roblas and Flojancic, were patrolling the area of Lorain Avenue and West 73rd
Street in Cleveland, when they observed Thomas urinating against the wall of a gas station. As the officers pulled into the parking lot, they observed Thomas approach the driver's door of a Toyota.[1] They pulled up behind the vehicle, and Roblas signaled to Thomas to approach the police cruiser. Roblas then asked Thomas for his driver's license to issue him a citation. Thomas replied that he did not have one. He stated that he had identification, but not with him. Roblas also asked him if he was driving the *Page 2 
Toyota. Thomas stated that he was not driving and that Miller was driving the vehicle. Roblas asked Thomas to sit in the back of the police cruiser so he could verify his identity to issue a citation. Prior to placing Thomas in the police cruiser, Roblas asked him if he had anything dangerous or illegal on him as he patted him down. Thomas responded that he had marijuana in his pocket.
 {¶ 4} After retrieving the marijuana from Thomas' pocket, Roblas approached Miller, who was seated in the passenger seat, and asked her if she was driving the car. She replied that Thomas was driving and it was his car. Then she stated it was her brother-in-law's car. Miller changed her story again and claimed the car belonged to a friend. At that point, Johnson exited the vehicle and began to walk away. Roblas advised her to stay in the area. Roblas also asked Miller to step out of the vehicle. Roblas had Miller and Johnson stay with officers from a back-up car while he and Flojancic approached Rawlings. Upon opening the vehicle's rear door, the officers smelled a strong odor of marijuana. The officers placed Rawlings in the rear of their cruiser and searched for drugs in the area where Rawlings had been seated. They found seven baggies of marijuana and $6,000 in cash under the driver's seat. Thomas and Rawlings were arrested and Miller and Johnson were secured in the back of the other police cruiser and later arrested. *Page 3 
 {¶ 5} The officers ordered a tow of the Toyota pursuant to the arrests. They completed an inventory search of the vehicle prior to the tow and discovered six large bags of marijuana and cash in the trunk. While booking Miller, officers discovered $3,000 in her purse.
 {¶ 6} Miller appeals, raising two assignments of error for our review. In the first assignment of error, she argues that the trial court erred when it denied her motion to suppress because the search and seizure violated her federal and state constitutional rights.
 Standard of Review — Motion to Suppress {¶ 7} In reviewing a trial court's ruling on a motion to suppress, the reviewing court must keep in mind that weighing the evidence and determining the credibility of witnesses are functions for the trier of fact. State v. DePew (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542;State v. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Curry (1994),95 Ohio App.3d 93, 96, 641 N.E.2d 1172, citing, State v. Schiebel (1990),55 Ohio St.3d 71, 564 N.E.2d 54. The reviewing court, however, must decide de novo whether, as a matter of law, the facts meet the appropriate legal standard. Id.; see, also, State v. Claytor (1993),85 Ohio App.3d 623, 627, 620 N.E.2d 906.
 {¶ 8} Miller argues that the search of the car cannot be justified as a search incident to a lawful arrest. She claims that the officers had no lawful *Page 4 
authority to investigate the contents of the vehicle and the "inquiry concerning whether Thomas was driving was just a ruse to look for contraband in the car."
 {¶ 9} In the instant case, a review of the record reveals that Thomas' actions initiated all the events that led to the discovery of the drugs and money and the arrests. The officers observed Thomas urinating against a gas station wall and intended to cite him for disorderly conduct. When Roblas asked Thomas for his driver's license, Thomas told Roblas that he did not have a driver's license and that he had no identification with him. At that point, Roblas asked Thomas to sit in the back of the police cruiser so police could verify his identity and issue a citation.
 {¶ 10} Prior to placing him in the police cruiser, Roblas asked Thomas if he had anything dangerous or illegal on his person. Thomas told Roblas that he had marijuana in his pocket. He also told Roblas that he was not the driver of the Toyota and that Miller was driving. Since Roblas saw Thomas walking to the driver's side and about to open the driver's door, he decided to investigate further. He believed that Thomas was lying to him and had been driving without a license.
 {¶ 11} Under Terry v. Ohio (1968), 392 U.S. 1, 9, 88 S.Ct. 1868,20 L.Ed.2d 889, the United States Supreme Court held that theFourth Amendment allows a police officer to stop and detain an individual if the officer possesses a *Page 5 
reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." See, also, State v. Andrews (1991),57 Ohio St.3d 86, 565 N.E.2d 1271.
 {¶ 12} In deciding whether reasonable suspicion exists, courts must examine the "`totality of the circumstances' of each case to determine whether the detaining officer has a `particularized and objective basis' for suspecting legal wrongdoing." United States v. Arvizu (2001),534 U.S. 266, 122 S.Ct. 744, 151 L.Ed.2d 740, quoting, United States v.Cortez (1981), 449 U.S. 411, 417-418, 101 S.Ct. 690, 66 L.Ed.2d 621;State v. Bobo (1988), 37 Ohio St.3d 177, 524 N.E.2d 489, paragraph one of the syllabus, citing, State v. Freeman (1980), 64 Ohio St.2d 291,414 N.E.2d 1044.
 {¶ 13} In this instance, Roblas was able to point to specific and articulable facts that criminal activity was afoot — namely, that Thomas had operated a motor vehicle without a valid driver's license because he was about to open the driver's door at the gas station. Thus, Roblas was justified in investigating further by speaking with Miller.
 {¶ 14} Furthermore, we find that the sequence of events that transpired after Roblas approached Miller justified the search of the interior of the vehicle. When Roblas asked Miller who was driving and who owned the car, she stated that Thomas was driving, and she indicated three different owners of the *Page 6 
vehicle. At that same time, Johnson exited the vehicle. Roblas told Johnson to stay in the area. He also had back-up officers watch Miller and Johnson while he went with Flojancic to speak with Rawlings. Upon opening the rear passenger door, the officers smelled a strong odor of marijuana. They searched the immediate surrounding area and found seven baggies of marijuana and $6,000 under the driver's seat. The smell of marijuana by a person qualified to recognize the odor is sufficient to establish probable cause to search a motor vehicle. State v. Moore,90 Ohio St.3d 47, 2000-Ohio-10, 734 N.E.2d 804; State v. Thompson, Cuyahoga App. No. 88858, 2007-Ohio-4296. Roblas testified that he recognized the smell of marijuana based on his training and experience as a police officer. Thus, we find that the officers had lawful authority to search the interior of the car.
 {¶ 15} Miller also contends that the inventory search of the duffle bags in the trunk was invalid because it was a pretextual investigatory search. She further contends that there was no evidence that the search was conducted in accordance with standard police policies and procedures.
 {¶ 16} An inventory search of a lawfully impounded vehicle is a well-defined exception to the warrant requirement of theFourth Amendment to the United States Constitution. State v. Mesa,87 Ohio St.3d 105, 1999-Ohio-253, 717 N.E.2d 329, citing Colorado v.Bertine (1987), 479 U.S. 367, *Page 7 
371, 107 S.Ct. 738, 93 L.Ed.2d 739; South Dakota v. Opperman (1976),428 U.S. 364, 367, 96 S.Ct. 3092, 49 L.Ed.2d 1000. This exception permits police to conduct a warrantless search of a vehicle, prior to the tow, for the purpose of inventorying its contents after the vehicle has been lawfully impounded. Mesa; see, also, Opperman; State v. Bridges, Cuyahoga App. No. 80171, 2002-Ohio-3771.
 {¶ 17} An inventory search is permissible in the absence of a warrant because it reasonably serves to advance three legitimate interests of the community: "the protection of the owner's property while it is in police custody; the protection of the police against claims or disputes concerning lost or stolen property; and the protection of the police against potential hazards posed by impounded property."Opperman.
 {¶ 18} In order for an inventory search to be constitutionally valid, it must be "reasonable"; it must be conducted in good faith, not as a pretext for an investigative search, and in accordance with standard police procedures or established routine. State v. Hathman,65 Ohio St.3d 403, 1992-Ohio-63, 604 N.E.2d 743, paragraph one of the syllabus, citing Opperman and Bertine.
 {¶ 19} We further note that the scope of an automobile inventory search may properly extend to the trunk and glove compartment. State v.Beavers, *Page 8 
Cuyahoga App. No. 88513, 2007-Ohio-2915; State v. Jenkins (July 5, 1990), Cuyahoga App. Nos. 57220 and 57221.
 {¶ 20} In the instant case, a review of the record reveals that the inventory search was reasonable and conducted in good faith. There is no evidence, other than Miller's unsupported assertions, that the search was pretextual in nature. The officers decided to have the vehicle towed incident to the arrests because the vehicle had Florida license plates, and they could not determine ownership. Roblas testified that once the decision is made to tow a vehicle, it is standard procedure for the officers on the scene to inventory the vehicle's contents. When the officers opened the trunk, they smelled a strong odor of marijuana. They found two duffle bags in the trunk, which contained six large bags of marijuana.
 {¶ 21} Although no written procedures were introduced into evidence, Roblas' testimony regarding standard police procedures is sufficient to show lawful reasons for the tow. See State v. Odavar, Cuyahoga App. No. 89029, 2007-Ohio-5535; State v. Semenchuk (1997), 122 Ohio App.3d 30,40, 701 N.E.2d 19, 25-26.
 {¶ 22} Furthermore, we find that the officers' opening of the duffle bags in the trunk met the constitutional standard of reasonableness because they were found during the course of the inventory search. *Page 9 
 {¶ 23} Therefore, based upon the evidence, we conclude that the inventory search of the Toyota was lawful and not a pretext to conduct an investigatory search.
 {¶ 24} Miller further argues that the police did not detain Thomas for an arrestable offense. She relies on R.C. 2935.26 and claims that Thomas should have been given only a citation because disorderly conduct is a minor misdemeanor. As a result, she maintains that the vehicle could not have been towed, searched, or inventoried. She also argues that Thomas' unlawful detention was the coercive force that negated his consent to search his pocket for marijuana.
 {¶ 25} R.C. 2935.26 provides that when a law enforcement officer is presented with the authority to arrest an individual for commission of a minor misdemeanor, he shall not arrest the person but shall instead issue a citation, unless certain exceptions apply. Miller contends that none of the exceptions apply to the instant case. The State contends that R.C. 2935.03 would have provided justification for the arrest of misdemeanors in the presence of a police officer for the marijuana in Thomas' pocket.
 {¶ 26} However, we find that Thomas' initial detention by the police was not to arrest him for disorderly conduct, but rather to verify his identity and investigate further their suspicion of his driving without a license. Because *Page 10 
Thomas did not have a driver's license and did not have any identification with him, Roblas was authorized to detain him to verify his identity. See State v. McFarland (1982), 4 Ohio App.3d 158, 159-160,446 N.E.2d 1168. Moreover, Roblas was allowed to protect himself by patting down Thomas prior to placing him in the police cruiser. SeeTerry. As Roblas conducted the pat-down, Thomas volunteered that he had marijuana in his pocket.
 {¶ 27} We note that the detention may continue when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. State v.Bennett, Cuyahoga App. No. 86962, 2006-Ohio-4274. When Thomas told Roblas that Miller was driving the Toyota, Roblas decided to investigate further because he believed that Thomas was lying to him. Roblas intended to give Thomas a citation if he was driving without a license, which is a first degree misdemeanor and an arrestable offense. See R.C. 4507.02.
 {¶ 28} Thus, we find that Roblas was authorized to detain Thomas to investigate the arrestable offense of driving without a license and to investigate if further criminal activity existed. Furthermore, as we stated above, the sequence of the events that transpired after Roblas spoke with Miller (her conflicting stories, and the marijuana and cash found under the driver's seat) justified the search, inventory, and tow of the vehicle. *Page 11 
 {¶ 29} Therefore, we find that the trial court did not err in denying Miller's motion to suppress the evidence.
 {¶ 30} Accordingly, the first assignment of error is overruled.
 Manifest Weight {¶ 31} In the second assignment of error, Miller argues that her conviction for possession of criminal tools was against the manifest weight of the evidence.
 {¶ 32} In evaluating a challenge to the verdict based on the manifest weight of the evidence in a bench trial, "the trial court assumes the fact-finding function of the jury. Accordingly, to warrant reversal from a bench trial under a manifest weight of the evidence claim, this court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in evidence the trial court clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered." Cleveland v. Welms,169 Ohio App.3d 600, 2006-Ohio-6441, 863 N.E.2d 1125, citing State v.Thompkins, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541.
 {¶ 33} Moreover, in State v. Bruno, Cuyahoga App. No. 84883,2005-Ohio-1862, we stated that the court must be mindful that the weight of the evidence and the credibility of witnesses are matters primarily for the trier of fact. A reviewing court will not reverse a verdict where the trier of fact could reasonably *Page 12 
conclude from substantial evidence that the prosecution proved the offense beyond a reasonable doubt. State v. DeHass (1967),10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus; State v. Eley
(1978), 56 Ohio St.2d 169, 383 N.E.2d 132. Furthermore, in reviewing a claim that a conviction is against the manifest weight of the evidence, the conviction cannot be reversed unless it is obvious that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.State v. Garrow (1995), 103 Ohio App.3d 368, 659 N.E.2d 814.
 {¶ 34} Miller was charged with possession of criminal tools under R.C. 2923.24 for the $3,000 found in her purse. R.C. 2923.24(A) provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." Prima facie evidence of criminal purpose includes "[possession or control of any substance, device, instrument, or article commonly used for criminal purposes, under circumstances indicating the item is intended for criminal use." R.C. 2923.24(B)(3).
 {¶ 35} Relying on State v. Diorio, Mahoning App. No. 05 MA 230,2007-Ohio-3401, Miller argues that the State failed to show that she intended to use the money illegally. In Diorio, the defendant was charged with gambling and possession of criminal tools. The court found that his possession of criminal tools *Page 13 
conviction was against the manifest weight of the evidence because the money found in his pocket did not constitute a gambling device pursuant to R.C. 2915.01 and 2915.02. Furthermore, the court held that the State failed to meet its burden because there were two individuals named "Joe" who were arrested, so the name "Joe" on a gambling ledger did not establish that Diorio had been gambling. Moreover, the State could not prove that the $1,744 found on Diorio was used for gambling.
 {¶ 36} However, we find that Diorio is distinguishable from the instant case. Here, the officers found over 2,000 grams of marijuana and $6,000 in cash in the vehicle. The drugs found under the driver's seat consisted of seven baggies of marijuana packaged for trafficking. The officers found six large bags of marijuana in the trunk. Miller testified in her own defense, claiming that she rented the vehicle and drove from Florida in an effort to reconcile with her husband. Before she came to Cleveland, she cashed her 2005 income tax refund check for $1,347. She stated that the remainder of the $3,000 found in her purse came from a money order she cashed and wages she earned as a hairstylist. Miller failed to provide receipts or specifically account for the balance of $1,653.
 {¶ 37} The trial court, as the trier of fact, is free to accept or reject all or any part of the testimony of the witnesses and assess the credibility of those witnesses. See State v. Wilson, Cuyahoga App. No. 88289, 2007-Ohio-2373. The *Page 14 
trial court found the State's evidence more credible and believed that the $3,000 in Miller's purse was used in association with the drugs discovered in the vehicle. Thus, we find that the trial court did not "lose its way" and Miller's conviction was not against the manifest weight of the evidence.
 {¶ 38} Accordingly, the second assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, J., and MARY JANE BOYLE, J., CONCUR
[1] Miller was seated in the front passenger seat, and Rawlings and Johnson were seated in the rear of the vehicle. *Page 1