JOURNAL ENTRY AND OPINION
{¶ 1} Defendant-appellant, Hasani Thomas ("Thomas"), appeals his conviction. Finding no merit to the appeal, we affirm.
 {¶ 2} In June 2006, the Cuyahoga County Grand Jury indicted Thomas, along with three co-defendants, Janet Miller ("Miller"), Kerron Rawlings ("Rawlings"), and Shannon Johnson ("Johnson") for drug possession, a violation of R.C. 2925.11, drug trafficking, a violation of R.C. 2925.03, and possession of criminal tools, a violation of R.C. 2923.24. Thomas pled not guilty to the charges and moved to suppress the evidence seized by the police in connection with his arrest.
 {¶ 3} This court in State v. Miller, 8th Dist. No. 90518,2008-Ohio-4453, ¶ 3-5, aptly described the evidence presented at the suppression hearing[1] as follows:
 {¶ 4} "In April 2006, Cleveland police officers, Roblas and Flojancic, were patrolling the area of Lorain Avenue and West 73rd Street in Cleveland, when they observed Thomas urinating against the wall of a gas station. As the officers pulled into the parking lot, they observed Thomas approach the driver's door of a Toyota.[2] They pulled up behind the vehicle, and Roblas signaled to Thomas to approach the police cruiser. Roblas then asked Thomas for his driver's license to issue him a citation. Thomas replied that he did not have one. He stated that he had identification, but not with him. Roblas also asked him if he was driving the Toyota. *Page 4 
Thomas stated that he was not driving and that Miller was driving the vehicle. Roblas asked Thomas to sit in the back of the police cruiser so he could verify his identity to issue a citation. Prior to placing Thomas in the police cruiser, Roblas asked him if he had anything dangerous or illegal on him as he patted him down. Thomas responded that he had marijuana in his pocket.
 {¶ 5} "After retrieving the marijuana from Thomas' pocket, Roblas approached Miller, who was seated in the passenger seat, and asked her if she was driving the car. She replied that Thomas was driving and it was his car. Then she stated it was her brother-in-law's car. Miller changed her story again and claimed the car belonged to a friend. At that point, Johnson exited the vehicle and began to walk away. Roblas advised her to stay in the area. Roblas also asked Miller to step out of the vehicle. Roblas had Miller and Johnson stay with officers from a back-up car while he and Flojancic approached Rawlings. Upon opening the vehicle's rear door, the officers smelled a strong odor of marijuana. The officers placed Rawlings in the rear of their cruiser and searched for drugs in the area where Rawlings had been seated. They found seven baggies of marijuana and $6,000 in cash under the driver's seat. Thomas and Rawlings were arrested and Miller and Johnson were secured in the back of the other police cruiser and later arrested.
 {¶ 6} "The officers ordered a tow of the Toyota pursuant to the arrests. They completed an inventory search of the vehicle prior to the tow and discovered six large bags of marijuana and cash in the trunk. * * *" *Page 5 
 {¶ 7} The trial court denied the defendant's motion to suppress. Prior to proceeding to trial, the trial court specifically inquired as to whether separate trials were necessary in light of the possibility of co-defendants' out of court statements being offered into evidence, which would ordinarily not be admissible in separate trials but possibly introduced in a joint trial. Specifically, the trial court inquired as to the applicability of United States v. Bruton (1968), 391 U.S. 123. InBruton, the court held that the accused's right of confrontation is violated by the admission of a co-defendant's confession in a joint trial when there is substantial risk that the jury, despite cautionary instructions, considered the incriminating out of court statements. Id. at 126.
 {¶ 8} Defense counsel for all four defendants waived any issue regarding a purported Bruton violation and indicated that, because the matter was being tried to the bench as opposed to a jury, they were confident that the judge could keep the evidence separate as to each defendant. Specifically, Thomas's counsel indicated that he was confident that the trial judge would not consider Miller's statement identifying Thomas as the driver for purposes of deciding Thomas's case. The judge then proceeded to ask each defendant if they agreed to waiving any alleged Bruton violation on appeal, and they agreed.
 {¶ 9} The parties agreed to incorporate the evidence presented at the suppression hearing as part of the trial provided that such evidence would be admissible at trial. The following additional evidence was presented at trial as it relates to Thomas: *Page 6 
 {¶ 10} The State presented evidence of the exact amount of drugs discovered on the day of the incident: (1) .065 grams of marijuana in a baggie found in Thomas's pocket, (2) 161.01 grams of marijuana under the driver seat of the vehicle, and (3) 434.8 grams of marijuana in the duffel bags located in the trunk of the car.
 {¶ 11} Officer Roblas testified in greater detail as to why he believed that Thomas was driving the Toyota parked in the gas station parking lot. On cross-examination, Officer Roblas testified that he "saw [Thomas] walk up to the vehicle, open the door and begin to get in."
 {¶ 12} Officer Roblas further testified on cross-examination that he later identified the owner of the vehicle as being someone named "Tulley" located in Florida. The evidence also revealed that the vehicle had a Florida license plate.
 {¶ 13} After the state's presentation of its case and after the trial court denied Thomas' motion for a Crim. R. 29 acquittal, Thomas rested his case.
 {¶ 14} The trial court found Thomas guilty on all three counts of the indictment and sentenced him to two years in prison.[3]
 {¶ 15} Thomas appeals, raising the following five assignments of error:
 {¶ 16} "[I.] The trial court violated Hasani Thomas's constitutional right to be free from unreasonable searches and seizures, when it denied his motion to suppress illegally seized evidence. *Page 7 
 {¶ 17} "[II.] Appellant was denied his Sixth Amendment right to the effective assistance of counsel because trial counsel failed to sever his case from that of co-defendant Janet Miller because the joinder of their two cases was prejudicial and violated his right to a fair trial.
 {¶ 18} "[III.] Alternatively, the trial court violated Mr. Thomas's rights to due process and a fair trial by allowing the case to proceed as if the matter were tried jointly but considered separately then changing the case to a joint trial without notifying anyone that it had done so until it entered its verdict.
 {¶ 19} "[IV.] Mr. Thomas was deprived of liberty without due process where the evidence was insufficient to prove that he either possessed or trafficked in marijuana.
 {¶ 20} "[V.] The trial court's verdict is against the manifest weight of the evidence where the court relied exclusively on the testimony of a single co-defendant."
 Motion to Suppress {¶ 21} In his first assignment of error, Thomas argues that the trial court erred in denying his motion to suppress.
 {¶ 22} Appellate review of a suppression ruling involves mixed questions of law and fact. See State v. Burnside, 100 Ohio St.3d 152,2003-Ohio-5372. When ruling on a motion to suppress, the trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight of the evidence. See State v.Fanning (1982), 1 Ohio St.3d 19, 20. An appellate court *Page 8 
must accept the trial court's findings of fact as true if they are supported by competent and credible evidence. Burnside, supra, at ¶ 8. But the appellate court must then determine, without any deference to the trial court, whether the facts satisfy the applicable legal standard. Id.
 {¶ 23} Thomas contends that the State should not have been able to admit into evidence the drugs or money discovered in the vehicle because the search and seizure were improper for the following three reasons: (1) the police had no justifiable basis for investigating whether Thomas had a driver's license and detaining him beyond issuing a minor misdemeanor citation for disorderly conduct; (2) the police had no grounds for searching the vehicle because there was no arrest at that point; and (3) the police's inventory search of the vehicle was improper. We disagree.
 {¶ 24} In Miller, supra, this court addressed the same arguments raised here and concluded that the trial court's admission of the evidence was proper. Id. at ¶ 7-28.
 {¶ 25} As discussed by this court, under Terry v. Ohio (1968),392 U.S. 1, 9, the Fourth Amendment allows a police officer to stop and detain an individual if the officer possesses a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot." Id. at ¶ 11. Notably, "a detention may continue when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop." Id. at ¶ 27, citing State v. Bennett, 8th Dist. No. 86962, 2006-Ohio-4274. Here, the officer's *Page 9 
authority to detain Thomas beyond issuing a minor misdemeanor for the disorderly conduct stemmed from the officer's reasonable and objective belief that Thomas was driving without a license. Miller at ¶ 26-28.
 {¶ 26} Indeed, contrary to Thomas's assertion that he had no connection to the vehicle, Officer Roblas testified that he saw Thomas walking to the driver's side and was about to open the driver's door. Officer Roblas decided to investigate further after Thomas, who had no driver's license, denied driving and claimed that Miller, who was sitting in the front passenger seat, was the driver. Given what he observed, Officer Roblas believed that Thomas was lying to him and that he was driving without a license. Based on this record, the officer acted within his authority in investigating further by questioning Miller as to whether Thomas was driving without a license, a first degree misdemeanor and an arrestable offense. Id.[4]
 {¶ 27} Next, in Miller, we likewise rejected the argument that the police had no justifiable basis to search the interior of the car. Id. at ¶ 14. Thomas contends that the search improperly preceded any valid arrest. Here, Thomas confuses the reason why the police searched the vehicle. In this case, the police did not initially search the vehicle incident to an arrest. The police searched the vehicle only after *Page 10 
smelling marijuana and only after observing the suspicious actions of the vehicle's occupants, namely, Miller changing her story as to who was driving and naming three different owners and Johnson exiting the vehicle. Id. Because the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, we find that Officer Roblas's recognition of the smell of marijuana justified the search of the interior. Id., citing State v. Moore, 90 Ohio St.3d 47, 2000-Ohio-10;State v. Thompson, 8th Dist. No. 88858, 2007-Ohio-4296.[5]
Accordingly, no violation of the Fourth Amendment occurred by the police searching the interior of the vehicle. Id.
 {¶ 28} Finally, we find no merit to Thomas's claim that the drugs found in the trunk should have been suppressed because the police had no authority to impound the vehicle. Here, all four occupants of the vehicle, including Thomas, were arrested and taken into custody. The evidence revealed that the City of Cleveland Police Department's standard procedures provided for the towing of a vehicle incident to the occupants' arrest. Further, the record revealed that the police could not determine ownership at the time of the arrests. Under these circumstances, the police acted well within their authority in deciding to have the vehicle towed incident to the four arrests. See, generally,Thompson, supra; State v. Delraye, 8th Dist. No. 79894, 2002-Ohio-3542. *Page 11 
 {¶ 29} Further, as we recognized in Miller, the inventory search was proper. The record demonstrates that the inventory search was reasonable, conducted in good faith, and done according to standard police procedures. Id. at ¶ 20; see, also, State v. Hathman,65 Ohio St.3d 403, 1992-Ohio-63 (inventory search is constitutionally valid if "reasonable," namely, conducted in good faith, not as a pretext for investigative search, and in accordance with standard police procedures or established routine). Thus, the drugs and money discovered in the trunk were properly seized and admissible at trial. Accordingly, the trial court properly denied Thomas's motion to suppress.
 {¶ 30} The first assignment of error is overruled.
 Ineffective Assistance of Counsel {¶ 31} In his second assignment of error, Thomas argues that he was denied his Sixth Amendment right to effective assistance of counsel because his counsel failed to request that his case be severed from the other co-defendants.
 {¶ 32} We review a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington (1984),466 U.S. 668. Under Strickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. State v. Bradley (1989), 42 Ohio St.3d 136, paragraph one of syllabus. To show prejudice, a defendant must prove that, but for his lawyer's errors, *Page 12 
a reasonable probability exists that the result of the proceedings would have been different. State v. Sallie, 81 Ohio St.3d 673, 674,1998-Ohio-343.
 {¶ 33} Thomas contends that the joinder of all four cases prejudiced him because the evidence pertaining to the other co-defendants improperly influenced the trial court's verdict in his case. He specifically complains that he was prejudiced by the following evidence that would not have been heard if he had a separate trial: (1) Miller's statements identifying him as the driver of the vehicle, (2) her testimony linking him to Florida, and (3) her testimony linking him to all of the co-defendants in the vehicle and implicitly linking him to the drugs discovered in the vehicle.
 {¶ 34} This case involved a bench trial. The Ohio Supreme Court has repeatedly recognized that when a judge hears evidence in a bench trial, the trial court must be presumed to have "`considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" State v. Post (1987),32 Ohio St.3d 380, 384, quoting State v. White (1968), 15 Ohio St.2d 146, paragraph two of the syllabus.
 {¶ 35} Initially, we note the unusual procedural posture of the trial proceedings below. Although Thomas's counsel agreed to the state presenting its case against all four defendants contemporaneously for the sake of judicial economy, he also asked that the trial court only consider the evidence that would be admissible against Thomas in a single trial and specifically asked that the trial court not consider the officer's statement of what Miller told him. Although Miller's statement to the officer was presented as part of the state's case in chief against all four co-defendants, *Page 13 
Miller's direct testimony was not.[6] After the state presented its case, Thomas moved for an acquittal and then rested. Here, Miller's direct testimony was not offered as part of the prosecution's case, but only in support of her own defense, after Thomas had already rested. Indeed, Thomas's counsel did not even cross-examine Miller based on his understanding that her testimony would not be considered against Thomas.
 {¶ 36} We find no evidence in the record that the trial court considered Miller's statement to the officer or her direct testimony as evidence against Thomas. To the contrary, the record reveals that the trial court and Thomas's defense counsel discussed at length that Miller's statement to the police identifying Thomas as the driver could not be considered as evidence against Thomas. Indeed, this evidence was first disclosed at the suppression hearing, which prompted the trial judge's discussion with the defense lawyers as to whether separate trials were needed. After conferring with Thomas's defense lawyers, the trial judge agreed that the evidence, which constituted hearsay, would not be considered against Thomas for the sake of his case. Thus, given that we must presume that the trial judge considered only competent evidence and given the representations made the by the judge, we cannot say that the judge improperly considered the hearsay evidence. SeeState v. Whitlow, 8th Dist. No. 84294, 2005-Ohio-4005, ¶ 40 (finding that *Page 14 
statement of a co-defendant admitted at joint trial did not prejudice the other co-defendant because the judge, who was the trier of fact, expressly acknowledged that the statement would not be considered against other co-defendant).
 {¶ 37} As for Miller's direct testimony in support of her own defense, our review indicates that the trial court agreed not to consider it, and that it was offered after Thomas's case had closed.
 {¶ 38} But even if the trial court considered Miller's statement to Officer Roblas or her direct testimony against Thomas, we fail to see how it changed the outcome of the trial. Thomas has failed to prove that the outcome of his trial would have been different if it was severed. The state produced evidence, separate and independent from Miller's statements, that directly linked Thomas as the driver of the vehicle and supported his conviction. For example, Officer Roblas testified that Thomas walked to the driver's side of the vehicle, opened the door, and was about to enter the vehicle. Indeed, the driver's seat was the only unoccupied seat in the vehicle when Thomas attempted to enter it. Additionally, Thomas's own testimony connected him to the vehicle because he claimed that Miller drove the vehicle. Given that Thomas denied driving the vehicle after Officer Roblas learned that he had no driver's license, and given the amount of marijuana discovered in the vehicle, a trier of fact could easily conclude that Thomas's statement was not credible. Thus, even without *Page 15 
Miller's testimony, there was evidence directly linking Thomas as the driver of the vehicle.[7]
 {¶ 39} Based on this record, we fail to see how Thomas' counsel was deficient or how Thomas was prejudiced by the joinder of the cases. Accordingly, his second assignment of error is overruled.
 {¶ 40} Having found that Thomas was not prejudiced by the joinder of the cases, we find no merit to his claim that the trial court violated his due process rights by failing to sua sponte sever the trial. Thomas' third assignment of error is overruled.
 Sufficiency of the Evidence {¶ 41} In his fourth assignment of error, Thomas argues that there was insufficient evidence to convict him of drug possession and drug trafficking. He contends that the state failed to prove that he had knowledge of the drugs in the vehicle or that he had possession over them. He further maintains that the State failed to demonstrate that he exercised control over the vehicle. We disagree.[8] *Page 16 
 {¶ 42} Sufficiency of the evidence is the legal standard which is applied to determine whether the evidence is legally sufficient to support a jury verdict as a matter of law. State v. Thompkins (1997),78 Ohio St.3d 380, 386. Legal sufficiency is a test of adequacy and is a question of law. Id., citing State v. Robinson (1955), 162 Ohio St. 486. When determining sufficiency of the evidence, we must consider whether, after viewing the probative evidence in a light most favorable to the prosecution, any rational trier of fact could have found all the elements of the offense proven beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 43} Thomas challenges the sufficiency of the evidence as to his convictions of drug trafficking and drug possession, defined in R.C. 2925.03(A)(2) and 2925.11(A). R.C. 2925.03 states that "[n]o person shall knowingly * * * [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance, when the offender knows or has reasonable cause to believe that the controlled substance is intended for sale or resale by the offender or another person." R.C. 2925.11(A) states that "[n]o person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 44} Here, Thomas's argument focuses on the fact that the state failed to present direct evidence of each of the elements of the crimes charged and relied solely on circumstantial evidence, which he argues resulted in the trial court making *Page 17 
improper inferences. But circumstantial evidence carries the same probative value as direct evidence. Jenks, supra, at 272. "Circumstantial evidence is defined as `[t]estimony not based on actual personal knowledge or observation of the facts in controversy, but of other facts from which deductions are drawn, showing indirectly the facts sought to be proved. * * *'" State v. Nicely (1988),39 Ohio St.3d 147, 150, quoting Black's Law Dictionary (5 Ed. 1979) 221. Indeed, the state may show constructive possession of drugs by circumstantial evidence alone. State v. Townsend, 8th Dist. No. 88065, 2007-Ohio-2370, ¶ 6, citing State v. Trembly (2000), 137 Ohio App.3d 134, 141.
 {¶ 45} Construing the evidence in a light most favorable to the prosecution, we find that the state satisfied its burden and presented evidence as to each element of the offenses. As discussed above, Officer Roblas's testimony sufficiently identified Thomas as the driver of the vehicle. Given that Thomas was driving the vehicle, a reasonable trier of fact could conclude that Thomas possessed the drugs found directly under his seat. See, e.g., State v. Cenkner, 5th Dist. No. 2006-CA-044,2007-Ohio-921; State v. Ray, 9th Dist. No. 03CA0062-M, 2004-Ohio-3412;State v. Wright, 12th Dist. No. CA2003-050127, 2004-Ohio-2811.
 {¶ 46} Thomas's possession and trafficking of marijuana was also consistent with his insistence that he was not the driver of the vehicle despite Officer Roblas observing him opening the driver's side door of a fully occupied car and "begin[ning] to get in." Notably, Thomas attempted to incriminate Miller as the driver. Here, Thomas's denial, in addition to not being credible, suggested a "consciousness of *Page 18 
guilt." Cf. State v. Taylor, 78 Ohio St.3d 15, 27, 1997-Ohio-243
(recognizing that a defendant's flight from the police may be indicative of a "consciousness of guilt"). Further, the amount of drugs in the duffel bags found in the trunk, namely, 434.8 grams of marijuana, coupled with the large amount of cash found with the drugs evidenced that Thomas was delivering the drugs for sale. Finally, prior to discovering the substantial amount of marijuana in the vehicle, the police confiscated a small amount of marijuana from Thomas's pocket. Based on all this evidence, albeit circumstantial, we find that the state sufficiently met its burden of proof.
 {¶ 47} Accordingly, the fourth assignment of error is overruled.
 Manifest Weight of the Evidence {¶ 48} In his final assignment of error, Thomas argues that the verdict is against the manifest weight of the evidence because the trial court improperly relied on Miller's testimony despite her own motive to exonerate herself and incriminate Thomas.
 {¶ 49} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. Thompkins, supra, at 387. Because it is a broader review, a reviewing court may determine that a judgment of a trial court is sustained by sufficient evidence, but nevertheless conclude that the judgment is against the weight of the evidence. Id., citing State v. Robinson (1955), 162 Ohio St. 486, 487. *Page 19 
 {¶ 50} In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as a "thirteenth juror," and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered."Thompkins, supra, at 387, quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 51} Having already found that the state presented sufficient evidence, apart from Miller's statements, to convict Thomas on all three charges, we find no merit to his argument that the trial court improperly relied on Miller's unreliable testimony. Indeed, there is no evidence in the record that the trial court even considered Miller's testimony. Accordingly, we cannot say that the trial judge "lost its way" in convicting Thomas.
 {¶ 52} The fifth assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
 The Court finds there were reasonable grounds for this appeal. *Page 20 
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MELODY J. STEWART, P.J. and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] The foregoing evidence was presented at the suppression hearing and then later incorporated into the evidence presented at trial. The additional evidence presented at trial will be discussed infra.
[2] "Miller was seated in the front passenger seat, and Rawlings and Johnson were seated in the rear of the vehicle." (fn. 1)
[3] As for the other co-defendants, the trial court acquitted Johnson after the state's presentation of its case, found Rawlings not guilty of all three charges, and found Miller guilty of possessing criminal tools but not guilty of the remaining two charges.
[4] We find no merit to Thomas's claim that the officer was precluded from investigating further because he did not specifically observe Thomas driving without a license. Here, Thomas told the officer that he did not have a driver's license despite the officer observing him opening the driver's side door and beginning to enter the vehicle while all of the other seats in the vehicle were occupied. Based on these circumstances and what the officer personally observed, the officer acted reasonably in investigating further. See, e.g., Cleveland v.Murad (1992), 84 Ohio App.3d 317.
[5] Indeed, none of the defendants claimed ownership or acknowledged driving the vehicle.
[6] To the extent that Officer's Roblas's testimony of what Miller told him, namely, that Thomas was the driver of the vehicle, constituted a Bruton violation, Thomas has waived any error below and on appeal. At oral argument, Thomas's counsel specifically stated that he is not raising any Bruton issue on appeal.
[7] Although Thomas also complains that Miller's testimony unduly influenced the trial judge because it connected him to Florida and to the other occupants in the vehicle, we find that this argument lacks merit. Thomas connected himself to the other occupants in the vehicle by claiming that Miller was the driver. As for Miller connecting Thomas to Florida, this testimony was irrelevant to the state's case. Miller's testimony incriminated Thomas only to the extent that it identified him as the driver. Because her testimony was duplicative of the state's evidence, we cannot say that Thomas's trial counsel was ineffective for failing to move for a severance of the trials.
[8] Thomas does not challenge his conviction of possession of criminal tools in this assignment of error. Accordingly, we need not discuss it. *Page 1