[Cite as *L.T.C. v. G.A.C.*, 2019-Ohio-789.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 107110**

**L.T.C.**

PETITIONER-APPELLEE

vs.

**G.A.C.**

RESPONDENT-APPELLANT

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Domestic Relations Division
Case No. DV-17-365445

**BEFORE:** Celebrezze, J., E.T. Gallagher, P.J., and Headen, J.

**RELEASED AND JOURNALIZED:** March 7, 2019

**ATTORNEY FOR APPELLANT**

Scott S. Rosenthal
Rosenthal Thurman, L.L.C.
North Point Tower, Suite 1720
1001 Lakeside Avenue
Cleveland, Ohio 44114


**ATTORNEYS FOR APPELLEE**

Thomas J. LaFond
Mark M. Mikhaiel
Ryan P. Nowlin
Schneider Smeltz Spieth Bell, L.L.P.
1375 East 9th Street, Suite 900
Cleveland, Ohio 44114


**ALSO LISTED:**

**Guardian ad Litem**

Barbara A. Belovich
Kronenberg & Belovich Law, L.L.C.
635 West Lakeside Avenue, Suite 605
Cleveland, Ohio 44113




FRANK D. CELEBREZZE, JR., J.:

{¶1} Respondent-appellant, G.A.C. ("appellant"), brings the instant appeal challenging the trial court's adoption of a magistrate's decision granting a civil protection order ("CPO") in favor of petitioner-appellee, L.T.C. ("appellee"). Appellant argues that the trial court abused its discretion in granting the CPO. After a thorough review of the record and law, this court affirms.

## I. Factual and Procedural History

**{¶2}** On January 24, 2017, appellee filed a petition for an ex parte CPO. Appellee sought relief for herself and the parties' three minor children. These minor children were the product of appellant's and appellee's marriage. Appellee has also filed a complaint for divorce, and the parties were engaged in divorce proceedings through the pendency of this appeal.[1] *See* Cuyahoga C.P. No. DR-16-363105. On January 24, 2017, the trial court granted the ex parte CPO.[2]

**{¶3}** The facts surrounding the basis for appellee's CPO are as follows: appellant made several threats of violence directed towards appellee and the parties' children: E.G., 16 years old, D.G., 12 years old, and V.G., 7 years old; appellee and the children are in fear that appellant will inflict physical harm upon them; the minor children are undergoing counseling services to cope with this fear of appellant; and appellant assaulted D.G., grabbing the child by the neck in an aggressive manner.

**{¶4}** Thereafter, the trial court held hearings related to appellee's petition for a CPO on February 14, 2017, September 25, 2017, and November 20, 2017. On February 14, trial commenced and opening statements were presented to the court. The matter was then rescheduled to May 2, 2017; however, appellant requested a continuance, and the matter was continued to September 25, 2017. It appears from the record that the court heard testimony on September 25, 2017, and November 20, 2017.

**{¶5}** The magistrate granted the CPO on December 11, 2017, and made the following findings:

---

[1] However, as of the release of this opinion, the parties' divorce has been finalized: the trial court's judgment entry of divorce was filed on January 11, 2019.

[2] It appears from the record that a court-appointed guardian ad litem ("GAL") was appointed in the parties' divorce case and served in the same capacity in the CPO proceedings.

Based upon the totality of the evidence presented, [appellant's] complete denial that any of his admitted actions could cause the parties' children to be afraid of him and his demeanor during the trial, which at one point while on the stand, his testimony was almost incomprehensible, this [c]ourt finds that [appellee] proved, by a preponderance of the evidence, that [appellant] committed an act or acts of domestic violence as defined in R.C. 3113.31. The [c]ourt finds that [appellee] proved, by a preponderance of the evidence that [appellee] or [appellee's] family or household members are in danger of domestic violence[.]

{¶6} Thereafter, appellant filed preliminary objections on December 26, 2017, and filed supplemental objections on March 7, 2018. Appellant argued that the trial court abused its discretion in granting the CPO and raised the following three objections: (1) the CPO was based upon inadmissible hearsay statements; (2) appellee did not prove by a preponderance of the evidence that she and the children were at risk of harm by appellant; and (3) the CPO was contrary to the weight of the evidence.

{¶7} On April 11, 2018, the trial court issued a judgment entry adopting the magistrate's decision and overruling appellant's objections. It is from that judgment entry that appellant brings the instant appeal. He assigns a sole assignment of error for our review:

I. The trial court erred and abused its discretion by granting the [CPO] after the full hearing.

## II. Law and Analysis

### A. CPO

{¶8} In his sole assignment of error, appellant argues that the trial court abused its discretion in granting the CPO.

{¶9} This court has articulated that the standard of review of determinations regarding a CPO depends upon the nature of the challenge to the CPO. *Allan v. Allan*, 8th Dist. Cuyahoga No. 101212, 2014-Ohio-5039, ¶ 11, citing *Abuhamda-Sliman v. Sliman,* 161 Ohio App.3d 541, 2005-Ohio-2836, 831 N.E.2d 453 (8th Dist.). If the issue to be resolved on appeal is whether a

protection order should have been issued at all, this court's review "'is whether there was sufficient credible evidence to support a finding that the respondent had engaged in acts or threats of domestic violence.'" *Allan* at *id.*, quoting *Reynolds v. White*, 8th Dist. Cuyahoga No. 74506, 1999 Ohio App. LEXIS 4454, 11 (Sept. 23, 1999).

{¶10} Therefore, because appellant argues that the CPO should not have been granted, we must determine whether there was sufficient, credible evidence to support a finding that appellant engaged in acts or threats of domestic violence against the children. *Allan* at ¶ 12.

{¶11} Pursuant to R.C. 3113.31, a person who is subject to domestic violence may petition a court for a protection order. In order to obtain a CPO, the petitioner must prove by a preponderance of the evidence that the petitioner, petitioner's family, or petitioner's household members are in danger of domestic violence. *Felton v. Felton,* 79 Ohio St.3d 34, 679 N.E.2d 672 (1997), paragraph two of the syllabus.

{¶12} Relevant to our review, domestic violence is defined as "[p]lacing another person by the threat of force in fear of imminent serious physical harm." R.C. 3113.31(A)(1)(b). R.C. 2919.25.211(A), in turn, states, "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

### 1. Risk of Harm

{¶13} Appellant argues that the trial court erred when it found that appellee had proved by a preponderance of the evidence that appellee and the children were at risk of harm from appellant. We disagree.

{¶14} Appellee testified that she and appellant had been married for approximately 20 years. Appellee stated that appellant "always had mental health issues and struggled with [these issues] the whole marriage." (Tr. 7.) Appellant was prescribed several psychotropic and

psychiatric medications and was diagnosed with bipolar disorder. Appellee stated that in the recent years of the parties' marriage, appellant "got way worse, way more withdrawn, and agitated and aggressive and just changed a lot." (Tr. 7.) Appellee also testified that appellant had a drinking problem and used drugs during most of the marriage, although "about [seven] years ago he quit drinking" and attended Alcoholics Anonymous meetings. (Tr. 7.) However, appellee stated that after she and appellant separated in June 2016, appellant began drinking alcohol again.

{¶15} Appellee testified that during the marriage, appellant was easily angered, and would yell at her and call her vulgar names in front of the children. Appellee stated that she and the minor children are living in constant fear that appellant will harm them. Appellee specifically testified that

> Yes. I am terrified. I have to take care of my kids by myself and I am the only one at the house taking care of them. And I have to console them and put them to bed every night knowing that there is nothing I can do if he wants to hurt them or hurt me.
>
> * * *
>
> Everyone is living in constant fear because they know that [appellant] is unpredictable and capable of things because he has no remorse and he is angry and he is vindictive and revengeful and he has no moral compass and when you are close to him, you know that and it is terrifying. And when you know that people have wronged him, you know that anything can happen.

(Tr. 28-29.)

{¶16} In addition, appellee testified that the parties' oldest child, E.G., lives in fear of appellant every day.

> [APPELLEE]: [E.G.] is really afraid of [appellant.] She lives in fear all of the time. [E.G.] checks and rechecks clocks all of the time, and any slight noises she hears she overreacts and she gets worried but she is living in constant fear right now.

(Tr. 12.)

{¶17} Appellee also testified to a specific instance that E.G. exhibited fear of appellant. Appellee testified that sometime in August 2017, appellee was not at home one evening, and that E.G. texted appellee "that someone, that [E.G.] thought [was] her father was at the house and [E.G.] was terrified." (Tr. 12.) Appellee testified that D.G.'s friend's father had actually stopped by the house that evening, and drove a vehicle similar to appellant's vehicle and had similar hair color to appellant. Appellee stated that E.G. thought the individual was appellant, and E.G. texted appellee that appellant was at the house. Appellee called 911, and the police arrived at the home. Appellee stated that E.G. realized that this individual was not appellant and realized it was a false alarm. Appellee testified:

> [APPELLEE]: I called [E.G.] right away [after appellee received the text from E.G.] and by the time I called her, [E.G.] realized her mistake and she felt so bad and she just was — I never saw her like that. She was crying and she was scared but she also felt like silly because [D.G.'s friend's father] is a person [E.G.] should know. She's living in fear so she couldn't react.

(Tr. 13.)

{¶18} Appellee further testified that there were other specific incidents in which appellant's behavior made the children upset and fearful. In particular, appellee testified that she observed the children upset after an alleged incident in which appellant was driving his vehicle on the highway in excess of 100 m.p.h. with all three children in the car.

{¶19} Appellee detailed an incident in which she picked the children up after a stay with appellant. Appellee learned that appellant was describing to the children a "manifesto" which apparently consisted of writings and poems about demons and the devil. When appellee picked

the children up on this particular occasion, she observed that the children "were absolutely terrified. They were shaking." (Tr. 23.)

> When I picked [the children] up from the visit with [appellant], I could see [appellant] like yelling at them in public and [making] gestures and acting so angry because [the children] couldn't understand these words that he was writing about and it was completely psychotic. It included the freakiest stuff ever. They were so scared.

(Tr. 23.)

{¶20} In addition, appellee testified that while the parties were living together, appellant would become very angry and scream and yell at appellee. Appellee testified that "[appellant] is definitely an unpredictable, angry person in general[.]" (Tr. 7-8.) Appellee testified that simply the manner in which appellant screams and becomes angry is itself terrifying to her.

> [APPELLEE'S COUNSEL]: When [appellant] gets angry, does he exhibit his anger in a loud threatening way?
>
> [APPELLEE]: Yes. It is terrifying. He yells, shakes, he gets super scary. It is really terrifying. He has no control over himself at all.

(Tr. 30.)

{¶21} Appellee also testified to appellant's repeated threats of harm. "He threatened [me], he said all of the time he is going to take me down and I will regret it and he is trying to [instill] fear inside of me." (Tr. 29.)

{¶22} Furthermore, appellee also testified to an incident in which appellant specifically made threats of harm to her and caused physical harm to [D.G.]. Appellee testified to the following incident that occurred at D.G.'s youth soccer game between appellee, appellant, and appellant's girlfriend, Kayla.

> [APPELLEE]: Well, [appellant] waited until the game is over to go up to [D.G.] and grab on to his neck and walked him to the parking lot and when [I] came over to collect my son [appellant] started yelling at me. Yelling in front of everyone

and he had threatened me.   I asked him, are you threatening me?   No.   [Kayla] will snap you, [appellee], like a twig.

(Tr. 18.)

{¶23} Appellant admitted to this statement and testified that he "told [appellee] you better get back.  You are going to get hurt."   (Tr. 76.)   "I meant that Kayla was going to hurt [appellee].  * * *   Because [appellee] was screaming in [Kayla's] face, spitting on [Kayla]. Kayla didn't say a word."   (Tr. 76.)   Appellant then testified that he said that Kayla "will snap [appellee] like a stick. [Appellee] looked at me and saw I was serious and [appellee] ran three feet."   (Tr. 77.)   Further, on cross-examination, appellant admitted that these remarks to appellee were a threat.   (Tr. 93.)

{¶24} Another incident occurred after one of D.G.'s basketball games in January 2017. Appellee observed appellant physically grab D.G. and walk out of the gymnasium to the parking lot.

> [APPELLEE]:   * * * [Appellant] had [D.G.] by the back of the head pulling him, moving him where [appellant] wanted him to go, and we were outside and [appellant] starts telling [D.G.] I know you don't want to live with your mom.   I know she is a witch, and [appellant] started screaming at [appellee] calling [me] all of these names * * * and [D.G.] is totally freaked out.
>
> [D.G.] is crying and trying to tell [appellant] he doesn't want [appellant] there, and he doesn't feel comfortable when he is there.   And [appellant] is not listening. [D.G.] just cries and cries and doesn't even want to go [to his basketball games] any more. [D.G.] is terrified.

(Tr. 20.)

{¶25} In our review of the record, we find that there was sufficient and credible evidence to establish that appellant committed acts of domestic violence by his threats and actions.   The testimony presented established that appellant placed appellee and D.G., by the threat of force, in fear of imminent serious physical harm, in violation of R.C. 3113.31(A)(1)(b).    Moreover, the

testimony established that appellant engaged in a pattern of conduct that knowingly caused appellee and the minor children to believe that appellant will cause physical harm to them in violation of R.C. 2919.25(A). This testimony also established that appellant's conduct caused mental distress to appellee and the minor children, also in violation of R.C. 2919.25(A). Based on these facts, we find that there was sufficient and credible evidence to establish that appellant committed acts of domestic violence.

## 2. Inadmissible Hearsay

**{¶26}** Appellant also argues that the trial court abused its discretion in granting the CPO, because the trial court based its decision, in part, on inadmissible hearsay testimony. Appellant further argues that because the trial court relied on, and cited to, inadmissible hearsay, this constituted reversible error.

> The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). Absent an abuse of that discretion and a showing of material prejudice, an appellate court will not overturn a trial court's ruling. *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985). The abuse-of-discretion standard is defined as "[']grossly unsound, unreasonable, illegal, or unsupported by the evidence.[']" *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, 932 N.E.2d 345, ¶ 18 (2d Dist.), quoting *Black's Law Dictionary* 11 (8th Ed.2004).

> Hearsay is defined in Evid.R. 801(C) as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Statements that fall under this definition are not admissible "unless an exception is made by the United States or Ohio Constitution, by Ohio statute, or by rules prescribed by this court." *Beard v. Meridia Huron Hosp.,* 106 Ohio St.3d 237, 2005-Ohio-4787, 834 N.E.2d 323, ¶ 23, citing Evid.R. 802.

*State v. Williams*, 8th Dist. Cuyahoga No. 101121, 2015-Ohio-172, ¶ 26-27.

**{¶27}** As an initial matter, we note that many of the statements appellant challenges were not objected to by appellant's counsel; therefore, appellant has waived all but plain error. *In re*

*M.H.*, 8th Dist. Cuyahoga No. 80620, 2002-Ohio-2968, ¶ 45. "Plain error exists when, but for the error, the outcome at trial would have been different." *In re I.K.*, 8th Dist. Cuyahoga No. 96469, 2011-Ohio-4512, ¶ 43, citing *In re J.T.*, 8th Dist. Cuyahoga Nos. 93240 and 93241, 2009-Ohio-6224, ¶67.

**{¶28}** Appellant argues that the trial court erred in allowing appellee to testify that the children are in fear of appellant. To this end, many of the statements appellant challenges are appellee's own statements regarding her observations of the children's fear of appellant. A witness's personal observations are not hearsay. *See State v. Bourn*, 8th Dist. Cuyahoga No. 92834, 2010-Ohio-1203, ¶ 30. Appellee's statements were based upon her own personal observations of the children's behavior — that the children were fearful of appellant. As such, whether or not appellant's counsel objected to these statements, these statements were proper testimony and were not hearsay.

**{¶29}** Appellant also argues that the trial court erred when it ruled that appellee's testimony regarding the children's behavior and state of mind was admissible as an exception to hearsay pursuant to Evid.R. 803(2) and (3). We note that these are in fact not hearsay. Appellee did not testify to the children's statements; appellee testified to her observations of the children's behavior. To this end, the trial court incorrectly found that appellee's testimony was admissible as an exception to hearsay pursuant to Evid.R. 803(2) and (3).

**{¶30}** Moreover, contrary to appellant's argument, because this challenged testimony was appellee's own personal observations of the children's fear of appellant, Evid.R. 807 is wholly inapplicable. Evid.R. 807 pertains to a child's out-of-court statement, and in our review of the record, we find that appellee did not testify to the children's specific statements.

**{¶31}** Appellant also argues that appellee's testimony regarding appellant drafting a "manifesto" was improper hearsay. Appellant challenges the following testimony:

[APPELLEE'S COUNSEL]: Are you aware if [appellant] created a manifesto?

[APPELLEE]: Yes. I haven't seen it myself, but my children, [E.C. and D.C.'s] last visit, [appellant] had written poems, and the manifest[o] included writings about demons and the devil.

[APPELLANT'S COUNSEL]: Objection.

THE COURT: Overruled.

[APPELLEE]: And the kids were absolutely terrified. They were like shaking. When I picked them up from the visit with their father, I could see him like yelling at [the children] in public and gestures and acting so angry because [the children] couldn't understand these words * * * [the children] were so scared.

(Tr. 23-24.) We find that the trial court did not abuse its discretion in admitting this particular testimony. Appellee did not testify as to the contents of the writing — she testified to her observations of the children after appellant allegedly read the manifesto to the children.

**{¶32}** To the extent that appellant argues that the trial court improperly relied on appellee's testimony detailing her understanding of appellant's arrest,[3] we find no merit to this argument. In our review of the record, we note that the magistrate's decision and the trial court's judgment entry did not reference this specific testimony.

**{¶33}** Furthermore, appellant challenges appellee's testimony that referenced appellant driving in excess of 100 m.p.h. and that appellant put a gun to his own head.

[APPELLEE]: Right before we separated [appellant] drove the kids to work and [drove 100 m.p.h.] on the freeway.

[APPELLEE'S COUNSEL]: How do you know that?

---

[3] Appellant was arrested and indicted on various drug trafficking and drug possession, with firearm forfeiture specifications in Cuyahoga C.P. No.16-611451-A.

[APPELLEE]: [The children] told me, and [appellant] was talking about how he was going 100 [m.p.h.] and then he took [the children to his office] where he has a room with a huge stash of guns and took the kids in there and they were terrified. And when [the children] were scared [appellant] put the gun to his head to show [the children] that it wasn't loaded.

[APPELLANT'S COUNSEL]: Objection.

[THE COURT]: Sustained.

(Tr. 14.) We note that these statements were objected to, and the court sustained the objections. However, the magistrate's decision and the trial court's judgment entry relied on these facts. Therefore, to the extent that appellant argues that the trial court relied on inadmissible hearsay in this respect, we agree.

{¶34} However, we find this error to be harmless. *See Stout v. Bushong,* 4th Dist. Adams No. 07CA850, 2008-Ohio-2223 (where the trial court's failure to strike hearsay testimony amounted to harmless error as the only evidence necessary to the decision to grant the protection order were not based upon hearsay statements). Therefore, although the trial court considered the hearsay statements, we find this error to be harmless because there was still sufficient, credible evidence to support the trial court's decision granting the CPO.

{¶35} Accordingly, we find appellant's arguments that the trial court based its decision on inadmissible hearsay testimony to be without merit.

### 3. Length of CPO

{¶36} Appellant also argues that the trial court's granting of a five-year CPO was not supported by sufficient, credible evidence. Appellant further argues that because the trial court relied on an incorrect recitation of appellee's testimony — that appellant placed a gun to one of the children's heads — therefore, the length of the CPO is unreasonable, arbitrary and unconscionable.

**{¶37}** Because appellant challenges the scope of the CPO, namely, its duration, we review these arguments for an abuse of discretion. *Allan*, 8th Dist. Cuyahoga No. 101212, 2014-Ohio-5039, at ¶ 13.

**{¶38}** Appellant cites to no authority as required by App.R. 16(A)(7) in support of his arguments. Indeed, appellant simply makes the assertion that because the record showed that *he* put a gun to *his* head in front of the children, and because the trial court incorrectly found that appellant put a gun to one of the children's heads, the trial court should have ordered the CPO to be for a duration of less than five years.

**{¶39}** Based upon our analysis as to appellant's other arguments above, we find that the trial court's granting of a five-year CPO was supported by sufficient, credible evidence. Considering that appellant and appellee were involved in divorce proceedings, we are aware that such proceedings can take years to resolve. The ex parte CPO was originally granted on January 24, 2017, and therefore, the CPO was granted as of December 11, 2017. Although the divorce proceedings have since been finalized, there was a possibility that a lesser duration CPO would not have survived the finality of the divorce proceedings. As such, in our review of the record, we do not think the trial court abused its discretion in granting a CPO for a duration of five years.

### 4. Facts Not Within the Record

**{¶40}** Lastly, appellant argues that the trial court abused its discretion in granting the CPO because it relied upon facts not within the record. In particular, appellant argues that in overruling his objections to the magistrate's decision, the trial court incorrectly stated appellee's testimony.

**{¶41}** To this end, appellant identifies the same testimony as he argued as to the length of the CPO, which we discussed above. As noted above, in its findings granting the CPO, the trial court referenced that "[appellee's] testimony about [appellant] showing the children his firearm collection and [appellant] putting a gun to one of [the children's] heads." We find this to be an incorrect recitation of appellee's testimony. However, we find such error to be harmless.

**{¶42}** In our review of the record, we note that appellee's testimony indicated that one of her children stated to her that appellant put a gun "to his [own] head" in an attempt to demonstrate to the children that the gun was not loaded. However, in our review of the trial court's April 11, 2018 judgment entry overruling appellant's objections, we note that the trial court mistakenly found that appellant put the gun to one of the children's heads. Given the ample evidence demonstrating that appellee and her children were in danger of domestic violence, we find the trial court's error to be harmless.

**{¶43}** Further, we note that the underlying testimony was objected to by appellant's counsel and this objection was sustained by the magistrate.

> [APPELLEE]: [The children] told me * * * [appellant] took [the children to his office] where he has a room with a huge stash of guns and took the kids in there and they were terrified. And when [the children] were scared [appellant] put the gun to his head to show [the children] that it wasn't loaded.
>
> [APPELLANT'S COUNSEL]: Objection.
>
> [THE COURT]: Sustained.

(Tr. 14.) Thus, because this testimony was objected to by appellant's counsel and the magistrate sustained the objection, we presume that the magistrate disregarded this testimony.

> The Ohio Supreme Court has repeatedly recognized that when a judge hears evidence in a bench trial, the trial court must be presumed to have "'considered only the relevant, material, and competent evidence in arriving at its judgment unless it affirmatively appears to the contrary.'" *State v. Post*, 32 Ohio St.3d 380,

384, 513 N.E.2d 754 (1987), quoting *State v. White*, 15 Ohio St.2d 146, 239 N.E.2d 65 (1968), paragraph two of the syllabus.

*State v. Thomas*, 8th Dist. Cuyahoga No. 90623, 2008-Ohio-6148, ¶ 34.

### III.   Conclusion

**{¶44}** Based upon our review of the record, there existed sufficient, credible evidence to support a finding that appellant had engaged in acts or threats of domestic violence to appellee and the parties' three children.   As such, the trial court did not err in granting the CPO, and appellant's sole assignment of error is overruled.

**{¶45}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, domestic relations division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

EILEEN T. GALLAGHER, P.J., and
RAYMOND C. HEADEN, J., CONCUR