[Cite as *Ricksecker v. Thomson*, 2022-Ohio-2628.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| JOHN RICKSECKER, | CASE NO. 2021-P-0095 |
| Petitioner-Appellant, | |
| - v - | Civil Appeal from the Court of Common Pleas, Domestic Relations Division |
| DEREK THOMSON, | |
| Respondent-Appellee. | Trial Court No. 2020 DR 00125 |

**O P I N I O N**

Decided: August 1, 2022
Judgment: Affirmed

*L. Ray Jones,* 215 West Washington Street, Medina, OH 44256 (For Petitioner-Appellant).

*Jonathan P. Jennings,* Jennings Law Offices, LLC, 223 West Main Street, Ravenna, OH 44266 (For Respondent-Appellee).

JOHN J. EKLUND, J.

{¶1}   Appellant, John Ricksecker, appeals the Portage County Court of Common Pleas' order denying his petition for a Domestic Violence Civil Protection Order ("CPO") on behalf of his son, L.R. (D.O.B. 4/08/12), against Appellee, Derek Thomson, L.R.'s stepfather.

{¶2}   In his sole assignment of error, Appellant contends that the court improperly considered hearsay evidence in its judgment entry denying his petition for a CPO. Specifically, Appellant challenges the admissibility of an email report prepared by Kirstie

Clapper, the family assessment specialist for the Portage County Department of Job and Family Services ("JFS").

{¶3} After a review of the record and applicable law, we find Appellant's assignment of error to be without merit. The court did consider inadmissible hearsay evidence when it improperly included Ms. Clapper's report in the judgment entry denying Appellant's petition and there is no hearsay exception that applies. However, the error was harmless because there was other evidence considered that justified denying the petition. For the following reasons, we affirm the judgment of the Portage County Court of Common Pleas, Domestic Relations Division.

{¶4} It is undisputed that in March 2020, an incident occurred at Appellee's home involving L.R., where Appellee resides with L.R.'s mother, Bethany Thomson. The incident occurred prior to L.R. attending a wresting banquet at school when Appellee and L.R. were in the garage.

{¶5} Later that week, L.R. was staying with his father, Appellant, for scheduled parenting time. L.R. had finished taking a shower when he walked downstairs without a shirt on. Appellant noticed an L-shaped abrasion and bruising on L.R.'s left arm.

{¶6} After noticing the bruise, Appellant drove L.R. to the hospital where L.R. was examined by Nurse Malley. Appellant told Nurse Malley that Appellee had thrown L.R. down the steps at Appellee's home. Nurse Malley testified that L.R. reported the same occurrence of events when Appellant was in the room with him. Yet, when Nurse Malley was alone with L.R. and asked him if his statements were "rehearsed" or "off-the-cuff," he did not respond. As a mandatory reporter of abuse, Nurse Malley made a differential diagnosis of abuse and contacted Cuyahoga County JFS, Portage County

2

Children Services, and the Parma Heights Police Department. Nurse Malley spoke briefly with the police, and continued examining L.R. She determined through x-rays that L.R. had no prior fractures, but was unable to form an objective opinion as to what caused the current injury or whether L.R. had been abused in this instance.

{¶7} Following the examination, Appellant and L.R. spoke with police regarding the incident and the police began an investigation.

{¶8} On March 19, 2020, Appellant and L.R. returned to the hospital for a re-evaluation, which was conducted by Dr. Popa. Through reading her medical notes, Dr. Popa testified that Appellant told her that Appellee had tried to choke L.R. in the past. L.R. told Dr. Popa that when he told his father, "dad reached to his attorney and said without any marks cannot [sic] do anything about it." Dr. Popa also testified that because of the current abuse allegations, she was required to bill the incident as "child physical abuse…confirmed." However, Dr. Popa testified that she did not make a final determination of child abuse, but that she billed the incident as child abuse because "this is a billing code; it's how the medical software works."

{¶9} Also, on March 19, 2020, the family assessment specialist, Ms. Clapper, began her investigation in the matter. Ms. Clapper testified that she spoke to Appellant, Appellee, Mrs. Thomson, L.R., and L.R.'s sister regarding the allegations and the incident. She also testified that she conducted a home visit during her investigation. Ms. Clapper found no signs of child abuse and made a final determination that L.R.'s injuries were accidental. On March 24, 2020, she emailed a report of her findings to the Portage County Sheriff's Office in furtherance of the police investigation. As a result, the police ended their investigation, filed no charges against Appellee, and found no abuse.

3

{¶10} Ms. Clapper's report to the police described statements that L.R. had made to her including that: 1) L.R. believed the incident was an accident; 2) he was giving his mom and Appellee a hard time that day; 3) Appellee's knee must have hit him when they were walking down the stairs, causing him to slip, fall, and cause the injury; 4) when he slipped, his arm hit the wood railing on the staircase, which caused the L-shaped abrasion; and 5) he had told Appellant that the incident was an accident. It also stated that Ms. Clapper had been to the house and determined that the wood railing on the staircase was consistent with L.R.'s bruise.

{¶11} On March 27, 2020, Appellant filed a petition for a Domestic Violence Civil Protection Order against Appellee on L.R.'s behalf. On March 27, 2020, the court granted a temporary ex parte CPO.

{¶12} On November 23, 2020, the court, through a magistrate, conducted a full hearing on Appellant's petition. Appellant, Appellee, and Ms. Clapper testified. Trial deposition testimony of Nurse Malley and Dr. Popa was admitted into evidence.

{¶13} Appellee testified that L.R. was upset on the day of the incident, did not want to attend a school wrestling banquet, walked away from Appellee, and that Appellee "took hold of" L.R.'s arm causing L.R. to pull away from him. Appellee testified that he was unaware of any injury resulting from the incident.

{¶14} Ms. Clapper testified that she had investigated the allegations, described generally what she had done, and stated her conclusion that L.R.'s injuries were accidental. Appellee then moved to admit his exhibit 1, a series of police and agency reports, that included Ms. Clapper's March 24, 2020 report. Appellee argued that the entire exhibit qualified as a "business record" under OH Evid. R. 803(6) and was

4

admissible. Appellant agreed that Ms. Clapper's findings and recommendations in the report were admissible, but asserted the rest of her report and the other components of exhibit 1 were not. The magistrate took the arguments under advisement, including the possible admissibility of Ms. Clapper's report as a stand-alone exhibit, but did not rule on the matter.

{¶15} The magistrate ultimately recommended denying Appellant's petition and terminating the ex parte order. Appellant timely filed objections thereto and moved for written findings of fact and conclusions of law, which the magistrate issued.

{¶16} The court held a hearing on Appellant's objections, and on August 20, 2021, ruled on them and adopted the magistrate's opinion. In its judgment entry, with respect to Ms. Clapper's report, the court stated, "that it does not consider the statements contained within Ms. Clapper's report for purposes of determining the truth of the matter asserted, but instead, considers the information for purposes of assessing the credibility of the witnesses."

{¶17} Appellant now appeals the trial court's apparent admission and consideration of Ms. Clapper's report.

{¶18} Appellant's sole assignment of error states:

{¶19} "The Trial Court erred and committed reversible error n [sic] using inadmissible, excluded hearsay evidence for purpose of assessing credibility of witnesses, bottom pf [sic] page 15, page 16, and top of page 17 of the Court's Judgment Entry of August 30th, 2021 such evidence being hearsay, not subject to any exception under Ohio Evid R 801, 806, 807 and 902, such being an abuse of discretion."

5

**{¶20}** In an action for a Domestic Violence CPO, the petitioner bears the initial burden of proving by the preponderance of the evidence that the petitioner and/or the petitioner's family or household members are in danger of domestic violence. *Boals v. Miller*, 5th Dist. Ashland 2011-Ohio-1470, 2011 WL 1118464, ¶ 23.

**{¶21}** This court has held that whether evidence constitutes inadmissible hearsay is a question of law subject to de novo review. *Morford v. Morford*, 2018-Ohio-3439, 118 N.E.3d 937, ¶ 12 (11th Dist.). "Determining whether the evidence is offered for an impermissible purpose does not involve the exercise of discretion * * *, an appellate court should scrutinize the [trial court's] finding under a de novo standard of review." *State v. Hartman*, 161 Ohio St. 3d 214, 2020-Ohio-4440, 161 N.E.3d 651, ¶ 22, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 17.

**{¶22}** Under his assignment of error, Appellant asserts that the trial court improperly admitted Ms. Clapper's report (Respondent's Exhibit 1, page 6) because the report is hearsay.

**{¶23}** Hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible unless it falls into one of the applicable exceptions. Evid.R. 802.

**{¶24}** Under the definition of hearsay, we must first determine whether the report contains statements someone other than the declarant made. Evid.R. 801. Ms. Clapper's report included her description of statements made by L.R. concerning what occurred and contained the words: "he stated," L.R. "advised," and L.R. "reported." L.R. was the one who made the statements. Ms. Clapper only related the statements in her report.

6

Therefore, L.R.'s statements to Ms. Clapper, and as noted in her report, are statements made by someone other than the declarant.

{¶25} Next, we must determine whether the statements were offered to prove the truth of the matter asserted. Evid.R. 801. Many of the matters asserted in the Clapper report are described in ¶ 10. At the November 23, 2020 hearing, when Appellee's counsel argued to admit the full exhibit 1 into evidence, the magistrate asked "you are attempting to utilize for the truth of the matter asserted. Correct?" Appellee replied "yes." Although the trial court stated that it did not consider the statements to prove the truth of the matter asserted, the definition of hearsay under Evid. R. 801(C) applies to a statement that is "*offered in evidence* to prove the truth of the matter asserted." (Emphasis added). Appellee acknowledged that it was <u>offered</u> for its truth. Therefore, under Evid. R. 802, the statements were not admissible absent an exception.

{¶26} Within his assignment of error, Appellant states that Ms. Clapper's report is not subject to hearsay exceptions under evidence rules 801, 806, 807, and 902. Finding no exception applies, we, however, considered Evid.R. 803(6), the "business record" exception, which Appellee argued at the full CPO hearing.

{¶27} Evid.R. 803(6) provides the exception to hearsay for Records of Regularly Conducted Activity:

> A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

7

{¶28} "To qualify for admission under Rule 803(6), a business record must manifest four essential elements: (i) the record must be one regularly recorded in a regularly conducted activity; (ii) it must have been entered by a person with knowledge of the act, event or condition; (iii) it must have been recorded at or near the time of the transaction; and (iv) a foundation must be laid by the 'custodian' of the record or by some 'other qualified witness.'" *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 171.

{¶29} To properly authenticate business records, a witness must testify as to the regularity of the business activity involved in the creation of the record. *John Soliday Fin. Grp., L.L.C. v. Pittenger*, 190 Ohio App. 3d 145, 2010-Ohio-4861, 940 N.E.2d 1035, ¶ 35 (5th Dist.).

{¶30} Ms. Clapper's testimony is barren of evidence that her report was something "regularly recorded." She testified only that her investigations were a regularly conducted activity, not that reports stating her findings and conclusions to law enforcement were regularly recorded.

{¶31} We find that Ms. Clapper's report is inadmissible hearsay and, by admission of Appellee, was offered for its truth, not to weigh witness credibility. We also find that no exception to hearsay applies in this instance. However, we find this error to be harmless. When reviewing evidentiary rulings in protection order cases, appellate courts may find the trial court's failure to strike or not admit hearsay testimony to be harmless error if the evidence necessary to make the ruling was not based upon hearsay statements. *L.T.C. v. G.A.C.*, 8th Dist. Cuyahoga No. 107110, 2019-Ohio-789, ¶ 34.

8

{¶32} Here, the court did not only consider Ms. Clapper's report. In most of the judgment entry, the court discussed the other evidence, which was not objected to as hearsay, and stated that Appellant did not meet his burden of proof because he only offered his version of events without evidence supporting his claims. The court also relied heavily on the remaining evidence, including the deposition testimony from Nurse Malley and Dr. Popa, to determine that the evidence did not demonstrate that L.R. had been abused and did not enhance Appellant's credibility. Instead, the court found that the other evidence negatively influenced Appellant's credibility. In other words, the petitioner did not meet his burden of proof notwithstanding Ms. Clapper's report.

{¶33} The judgment of the Portage County Court of Common Pleas, Domestic Relations Division, is affirmed.


MARY JANE TRAPP, J.,

MATT LYNCH, J.,

concur.

9

Case No. 2021-P-0095